IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ADRIAN BUFORD WADE, # 12681, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-769-JPG |
| ) | |
| ROBERT HAIDA, MEARL JUSTUS, ) | |
| RICHARD WATSON, ) | |
| PHILLIP McLAURIN, JANA RUETER, ) | |
| WEXFORD HEALTH SOURCES, ) | |
| A. LEFLORE, BRENDAN KELLY, ) | |
| SGT. STRUBBERG, ) | |
| KENNETH CLAYTON, ) | |
| THOMAS TRICE, MIKE RIPPERDA, ) | |
| DR. SHAW, JOHN J. O'GARA, ) | |
| and THOMAS JOSEPH PHILO, ) | |
| ) | |
| Defendants. ) | |

# **MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff, who is currently a pretrial detainee in the St. Clair County Jail ("the Jail"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He filed his complaint on July 29, 2013. Later, on August 6, 2013, he submitted a letter and several other documents (Doc. 4), which the Court has construed as a motion to amend complaint. That motion shall be addressed below.

**The Complaint**

Several of Plaintiff's allegations date back as far as 1991, when he was convicted in St. Clair County of attempted sexual assault and received two years' probation. Plaintiff asserts that Defendant Haida (then the St. Clair County State's Attorney, and now a Circuit Court Judge) improperly filed the charge to reflect that a completed assault occurred, when it did not.

Defendant Haida then lied to the Illinois State Police in 1997, falsely indicating that Plaintiff had "three or four" sex offense convictions between 1991 and 1997 in St. Clair County (Doc. 1, p. 6). This action caused Plaintiff to be required to register as a sex offender. Further, because of Defendant Haida's actions, the false statement that Plaintiff had been convicted of multiple sex offenses was published in the Belleville News-Democrat in 2007, along with Plaintiff's photograph and the fact he was wanted for failure to register (Doc. 1, p. 7).

Plaintiff was subsequently prosecuted in 2008 for failure to register, but was acquitted after a jury trial. While that case was pending, Plaintiff was held in the Jail from June 2007 to November 2008 (Doc. 1, p. 7). During that detention, he was assaulted[1] by Defendant Clayton (corrections officer), who also falsely told other inmates that Plaintiff was in jail for raping babies, thus endangering Plaintiff's safety.

Plaintiff's medical needs were neglected by Defendant McLaurin (jail superintendent). Plaintiff suffered a severe injury while in the jail (he does not give any details on the nature of this injury) (Doc. 1, p. 8). Defendant McLaurin took away Plaintiff's wheelchair on several occasions, forcing Plaintiff to crawl on the floor to get around (Doc. 1, p. 8). He wrote letters complaining about the mistreatment to Defendants Justus (then-St. Clair County Sheriff, now deceased) and McLaurin, as well as to two St. Clair County Judges, to no avail.

Plaintiff was released from the Jail on November 4, 2008. Soon after, he was diagnosed with sciatica, "D.J.D.,"[2] and rheumatoid arthritis (Doc. 1, p. 9).

Plaintiff was arrested and detained two more times on St. Clair County warrants for failure to register as a sex offender, while Defendant Haida was the State's Attorney. Plaintiff

---

[1] Plaintiff does not give any facts regarding the assault by Defendant Clayton, but states it was captured on videotape (Doc. 1, p. 7).

[2] The Court presumes that Plaintiff is referring here to degenerative joint disease.

was held in the St. Louis City Justice Center from November 28, 2010, for 40 days until January 9, 2011, when the charge was dropped.  He was arrested again on June 11, 2011, and was held for 136 days in the St. Clair County Jail until October 24, 2011, when the charge was again dismissed.

During Plaintiff's 2011 stay in the Jail, Defendant Clayton again falsely told other inmates that Plaintiff was a sex offender who liked babies (Doc. 1, p. 9).  Plaintiff received death threats, and requested Defendant McLaurin to move him, but he was refused.  On August 2, 2011, another inmate attacked Plaintiff; only then was he placed in protective custody.  Plaintiff was given a walker, but no wheelchair.  He was in excruciating pain, but neither Defendant Rueter (administrative nurse) nor Defendant McLaurin would help him.  Plaintiff's complaints to Defendant Justus were ignored (Doc. 10).

After Plaintiff's release in October 2011, medical tests showed he had serious problems with his cervical spine and lumbar vertebrae, severe osteoarthritis, and needed a knee replacement as well as other joints replaced (Doc. 1, p. 10).

Once again, Plaintiff was arrested for failure to register as a sex offender, and returned to the Jail on April 13, 2012 (Doc. 1, p. 11).  He has remained in detention there since that time.  He was verbally abused by staff, not allowed to bathe for three weeks, and given only Tylenol for his pain.  Defendant Shaw ignored Plaintiff's medical problems, telling him he needed to lose weight, and refused to give him any treatment.  Defendant Leflore (corrections officer) refused to feed Plaintiff on August 12, 2012; on other occasions he served Plaintiff food containing spit and hair, and he continually cursed and verbally harassed Plaintiff (Doc. 1, p. 12).  Plaintiff's many complaints about this conduct were ignored.[3]  In addition, Plaintiff's legal mail has been opened

---

[3] Plaintiff submitted 107 pages of exhibits along with his complaint (Docs. 1-1 through 1-6).  These include many of his letters complaining to various officials about the jail conditions.

and his personal letters to family were not delivered.

Defendant McLaurin has continued to deny Plaintiff the use of a wheelchair. On April 27, 2012, Defendant McLaurin made Plaintiff sit, scoot, and crawl on the floor to get from the basement to the upstairs visiting room, (Doc. 1, pp. 13-14). On June 16, 2013, Plaintiff fell very hard to the floor, and was placed on 72-hour bedrest. He is in constant pain from his arthritis, particularly in his back and knees (Doc. 1, p. 19). His cell has no hot water, and he is not allowed to bathe often enough. He had only two baths over the ten-day period leading up to July 8, 2013 (Doc. 1, p. 14).

Plaintiff asked Defendant Philo (his public defender) to help him get relocated or released. At Plaintiff's July 2, 2013, state court appearance, Defendant Haida (now the judge presiding over Plaintiff's case) told Plaintiff there is nothing he can do about the jail conditions. The next day, Defendant McLaurin told Plaintiff he had talked to Defendant Philo, but there was no bed in the infirmary for Plaintiff (Doc. 1, p. 15).

Plaintiff seeks monetary damages for these alleged violations of his rights (Doc. 1, p. 19).

**Motion to Amend Complaint (Doc. 4)**

In this document, Plaintiff states that he may not have properly signed and dated the complaint. However, he did in fact sign it. He goes on to state that he should have listed St. Clair County as a Defendant, and that he believes some of the named Defendants (Haida, Philo, and O'Gara) may be "exempt" from suit (Doc. 4, p. 1). He also includes seven additional pages of exhibits (Doc. 4, pp. 2-8).

While a litigant may amend his complaint once as a matter of course within 21 days after serving it pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), Plaintiff has not tendered an amended complaint. Rather, it appears that he is requesting the Clerk to make piecemeal

changes to the original complaint by adding a party, and possibly dismissing others.  The Court will not accept such piecemeal amendments.  An amended complaint supersedes and replaces the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004).  As such, an amended complaint must stand on its own, without reference to any prior pleading.

Plaintiff's letter, construed as a motion for leave to amend (Doc. 4), does not set forth all claims against all defendants in a single document, as required by Federal Rule of Civil Procedure 8(a).  Accordingly, the motion (Doc. 4) is **DENIED** without prejudice.  The Court will proceed to review the original complaint, as required under § 1915A.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into several counts as enumerated below.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.

**Count 1:**  Claims against Defendant Haida for malicious prosecution, including the 1991 conviction, the placement of Plaintiff on the sex offender registration list, and the 2007 failure-to-register charge of which Plaintiff was acquitted; and against Defendants Kelly and Watson for the current "malicious prosecution" of another failure-to-register charge;

**Count 2:**  Claim against Defendant Haida for wrongful imprisonment, for twice (in 2010 and 2011) having Plaintiff arrested on failure-to-register charges that were later dismissed;

**Count 3:** Claim against Defendant Haida for defamation, for the 2007 publication of false information on Plaintiff's criminal history;

**Count 4:** Claim against Defendant McLaurin for deliberate indifference to serious medical needs, for depriving Plaintiff of his wheelchair and ignoring Plaintiff's complaints that he needed medical attention for severe pain (encompassing Plaintiff's detention in 2007-08, 2011, and 2012-present);

**Count 5:** Claims against Defendants Reuter (during 2011 detention) and Shaw (during detention from 2012-present) for deliberate indifference to his medical needs, for refusing to treat Plaintiff for severe pain;

**Count 6:** Claim against Defendant McLaurin for violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, for depriving Plaintiff of his wheelchair (encompassing Plaintiff's detention in 2007-08, 2011, and 2012-present);

**Count 7:** Claims against Defendant McLaurin for failure to protect Plaintiff from the August 2, 2011, attack by a fellow inmate, and against Defendant Clayton for inciting the assault by spreading false information to fellow inmates about Plaintiff being a child molester;

**Count 8:** Claim for assault/excessive force against Defendant Clayton in 2007 or 2008;

**Count 9:** Claim against Defendant Leflore for denial of food and contamination of Plaintiff's food;

**Count 10:** First Amendment claim that Plaintiff's legal mail has been improperly opened and his outgoing personal mail not delivered;

**Count 11:** Claim that Plaintiff has been denied hot water and not allowed sufficient baths;

**Count 12:** Claim that Plaintiff has been verbally harassed and threatened by Defendant

Leflore and other jail staff;

**Count 13:** Claim against Defendants Philo, O'Gara, Haida, Justus, and Watson, for allowing Plaintiff to remain confined under the conditions he complains of herein.

Although claims regarding prison conditions brought pursuant to § 1983, when involving detainees, arise under the Fourteenth Amendment and not the Eighth Amendment, *see Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000), the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'" *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999)). Thus, for 'cruel and unusual punishment' claims brought by a detainee, the plaintiff must show that the jail officials knew that the plaintiff was at risk of serious harm, and that they disregarded that risk by failing to reasonably discharge the risk. *Grieveson v. Anderson*, 538 F.3d 763, 771-72, 777-79 (7th Cir. 2008). This analysis applies to the claims brought by Plaintiff herein regarding his conditions of confinement at the Jail. Further, the Supreme Court has noted that pretrial detainees and convicted prisoners should be treated the same in terms of First Amendment protection. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979).

Accepting Plaintiff's allegations as true, the Court finds that in **Counts 4, 5, 6, and 7,** Plaintiff has articulated colorable federal claims against Defendants McLaurin, Reuter, Shaw, and Clayton, that shall receive further review. In addition, Plaintiff's claim in **Count 9** against Defendant Leflore, accusing him of withholding and contaminating Plaintiff's food, merits further review at this stage. However, the Court finds that Count 9 is unrelated to the rest of Plaintiff's surviving claims. Thus, Count 9 shall be severed into a separate case, as discussed

further below. All other claims and Defendants shall be dismissed pursuant to § 1915A.

**Dismissal of Count 1**

A tort claim for malicious prosecution may be brought in Illinois state court. The Seventh Circuit has held that where a plaintiff has a state law tort action available to him, this remedy "knocks out any constitutional theory of malicious prosecution." *Newsome v. McCabe*, 256 F.3d 747, 750 (7th Cir. 2001); *see also Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (the opportunity to sue in state court usually provides all the process that is due to seek redress against state actors). Thus, aside from any questions about prosecutorial immunity or the timeliness of the claims for prosecutorial actions in the 1990's and in 2007-2008, Plaintiff has not stated a federal civil rights claim upon which relief may be granted. Accordingly, Count 1 against Defendants Haida, Kelly, and Watson shall be dismissed without prejudice.

**Dismissal of Count 2**

According to the complaint, Plaintiff's 2010 and 2011 arrests and detention for failure to register as a sex offender were initiated by Defendant Haida while he was St. Clair County State's Attorney (Doc. 1, p. 9). Obviously, Defendant Haida's actions were taken in order to prosecute Plaintiff on those criminal charges. "In initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Under this authority, Defendant Haida is immune from suit for damages over Plaintiff's detention that resulted from the initiation of a state prosecution against him. Count 2 shall also be dismissed, but with prejudice.

**Dismissal of Count 3**

Defamation, like malicious prosecution, is a tort claim that arises under state law. It does not implicate any constitutional rights. Where a district court has original jurisdiction over a

civil action such as a § 1983 claim, it also has supplemental jurisdiction over *related* state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008).

The Court has jurisdiction over the federal civil rights claims herein, several of which shall receive further review. However, none of the surviving claims that arise from Plaintiff's detention in the St. Clair County Jail are factually or legally related to the defamation claim against Defendant Haida, such that they may be considered "part of the same case or controversy" as contemplated in 28 U.S.C. § 1367(a). For this reason, the Court finds that supplemental jurisdiction over this state defamation claim is not clearly established under § 1367(a).

Further, no other claims against Defendant Haida shall go forward in this action. Thus, if the Court were to have jurisdiction over the defamation claim, it should be severed pursuant to *George v. Smith*, 507 F.3d 605 (7th Cir. 2007). It is also possible that Defendant Haida may be shielded from this claim by prosecutorial immunity as well as the applicable statute of limitations, both of which a state court is entirely competent to assess. In the judgment of this Court, these factors provide compelling reasons, pursuant to §1367(c)(4), for the Court to decline to exercise supplemental jurisdiction if it were to exist under § 1367(a). Accordingly, Count 3 shall be dismissed without prejudice.

**Dismissal of Count 8**

Plaintiff states that he was "assaulted on video by Officer Clayton" during his 2007-08 detention in the Jail (Doc. 1, p. 7). He gives no further information beyond this bare assertion of assault.

A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.

Plaintiff's allegation of assault is nothing more than a conclusory statement, leaving the Court and the Defendant to speculate as to what actually occurred. Because this claim does not include sufficient facts to indicate that a constitutional violation may have occurred, Plaintiff fails to state a claim upon which relief may be granted as to this alleged assault by Defendant Clayton. Count 8 shall be dismissed without prejudice.

**Dismissal of Count 10**

Plaintiff's assertions that his legal mail has been opened and that his outgoing mail to family has not arrived (Doc. 1, p. 13) are similarly devoid of facts. Moreover, he does not state that any named Defendant was directly involved in improperly opening his legal mail or causing a disruption of his personal mail. Nor does he indicate when or how often these problems occurred.

Inmates have a First Amendment right both to send and receive mail. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Further, an inmate's legal mail is entitled to greater protection

than non-legal mail, because of the potential for interference with his right of access to the courts. *Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005); *Rowe*, 196 F.3d at 782. However, an isolated or inadvertent delay in delivery of regular mail or opening of legal mail may not rise to the level of a constitutional claim. *Rowe*, 196 F.3d at 782; *Bruscino v. Carlson*, 654 F.Supp. 609, 618 (S.D. Ill. 1987).

Plaintiff's brief allegation regarding his mail does not indicate anything more than an occasional problem, and does not identify the responsible party. Thus, it is not sufficient to state a claim upon which relief may be granted. Accordingly, Count 10 shall be dismissed without prejudice.

**Dismissal of Count 11**

There is no clear standard as to the minimum frequency of showers or baths an inmate must be allowed in a particular period of time. *See Davenport v. DeRobertis*, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (one shower per week for inmates in segregation is constitutionally sufficient). Thus, Plaintiff's complaint that he was limited to two baths in a ten-day period, absent extraordinary circumstances, is a short term, temporary deprivation that does not rise to the level of a constitutional violation. *See Harris v. Fleming*, 839 F.2d 1232, (7th Cir. 1988) (deprivation of toilet paper for 5 days, and deprivation of soap, toothbrush, and toothpaste for 10 days, was a temporary, isolated incident due to negligence of defendants, and did not violate prisoner's constitutional rights); *Caldwell v. Miller*, 790 F.2d 589, 600-01 (7th Cir. 1986) (mere discomfort and inconvenience do not implicate the constitution). Similarly, the claim that at one point, Plaintiff was not allowed a bath for three weeks, indicates a temporary deprivation only. Plaintiff does not allege that he had no means to clean himself during that time, or that he suffered any harm.

Further, Plaintiff does not claim that his cell lacked running water, just that it provided cold water only. This condition does not present an objectively serious risk to Plaintiff's health, thus it does not implicate the Constitution. *See Harris v. Fleming*, 839 F.2d 1232, 1235-6 (7th Cir. 1988) ("[i]nmates cannot expect the amenities, conveniences and services of a good hotel[;]" unpleasant conditions that do not result in physical harm do not rise to the level of an Eighth Amendment violation).

For these reasons, Count 11 shall be dismissed without prejudice.

**Dismissal of Count 12**

The Court in no way condones the verbal harassment and name-calling that Plaintiff alleges he suffered from Defendant Leflore and other correctional officers during his detention. However, this unprofessional behavior, even when racial epithets are used, does not rise to the level of a constitutional violation. "[H]arassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment." *Dobbey v. Ill. Dep't of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009). *See also Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws").

Accordingly, Count 12 shall be dismissed with prejudice.

**Dismissal of Count 13**

Plaintiff includes claims against Defendants Philo and O'Gara (his public defenders), Haida (as Circuit Judge), Justus (the former Sheriff), and Watson (the current St. Clair County Sheriff), for failing to take action in response to his complaints regarding his conditions of confinement, and failing to help him obtain a more favorable cell assignment or a release from the Jail. It is clear from the complaint that none of these individuals was directly involved in the deliberate indifference to Plaintiff's medical needs, the deprivation of his wheelchair, the failure

to protect him from attack by another inmate, or the food contamination described in Counts 4-7 and Count 9. Instead, Plaintiff wrote or spoke to these Defendants, pleading for help to remedy his complaints. He now seeks to hold them liable for the alleged constitutional deprivations caused by Defendants McLaurin, Reuter, Shaw, and Clayton, all of whom are employees at the St. Clair County Jail. This he cannot do.

In order to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Plaintiff does not allege that Defendants Philo, O'Gara, Haida, Justus, or Watson had any personal involvement in the problems he experienced while housed in the Jail, and he cannot create liability on their part merely by asking them to address his problems. *See Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009) (prisoner cannot maintain suit against public officials merely because he complained to them of constitutional violations).

Further, for an individual who holds supervisory authority over the alleged perpetrator(s) in a civil rights case, no liability will attach merely because of that supervisory role. The doctrine of *respondeat superior* does not apply in a § 1983 action. *Sanville*, 266 F.3d at 740. Defendants Justus and Watson, while they may have held ultimate authority over the staff of the St. Clair County Jail, cannot be held liable for the constitutional violations alleged against their subordinates under the facts alleged in Plaintiff's complaint. Likewise, although Defendants Justus and Watson may have been responsible for evaluating complaints filed by detainees under the Jail's grievance procedure, this role does not lead to liability for the matters raised in those grievances. The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v.*

*Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).  *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

As for Defendants Philo and O'Gara, their position as Plaintiff's attorneys in his criminal case imparts no liability or duty to rescue Plaintiff from his situation at the Jail.  Nor can he bring a claim against them for legal malpractice in a civil rights case.  A plaintiff cannot proceed with a federal claim under § 1983 against a non-state actor.  *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Gayman v. Principal Fin. Servs., Inc.,*, 311 F.3d 851, 852-53 (7th Cir. 2003).  Plaintiff's public defenders are not "state actors" amenable to a civil rights suit.  In *Polk County v. Dodson,* 454 U.S. 312 (1981), the Supreme Court held that a court-appointed attorney, even if employed by the state, may not be sued under § 1983 for legal malpractice, because such an attorney does not act "under color of state law."  *Id.* at 324-25.  *See also Sceifers v. Trigg*, 46 F.3d 701, 704 (7th Cir. 1995).

Finally, Defendant Haida, in his capacity as Circuit Judge, is immune from liability for his actions in presiding over Plaintiff's criminal case.  Judges, being sued solely for judicial acts, are protected by absolute judicial immunity.  *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Forrester v. White*, 484 U.S. 219, 225-29 (1988); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872); *Richman v. Sheahan*, 270 F.3d 430, 434 (7th Cir. 2001).

For these reasons, Count 13 shall be dismissed with prejudice.

**Dismissal of Defendants Trice, Strubberg, Ripperda, and Wexford Health Sources**

Defendant makes no factual allegations in the body of his complaint that describe any unconstitutional misconduct on the part of any of these Defendants (Doc. 1, pp. 6-15).  He merely includes them as parties, and makes conclusory allegations in his summary "statement of

claim" (Doc. 1, pp. 16-17) that they are responsible for "cruel and unusual punishment, mental cruelty, pain and suffering, inhumane treatment," and the like. Statements such as these (see discussion of Count 8 above) are insufficient to state a claim upon which relief may be granted, or to provide a Defendant with sufficient notice of the actions complained of, so that he may respond. Therefore, Defendants Trice, Strubberg, and Ripperda shall be dismissed from the action without prejudice.

As to Defendant Wexford Health Sources, not only does Plaintiff fail to include any factual allegations regarding this entity, he never alleges that either of the medical defendants (Defendants Shaw and Rector) acted or failed to act as a result of an official policy espoused by Wexford. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the violation). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Defendant Wexford Health Sources shall also be dismissed without prejudice.

**Count 9 – Severance**

Plaintiff alleges that Defendant Leflore deprived him of a meal or meals on one day (August 12, 2012). On several other occasions, he intentionally served Plaintiff food contaminated with human saliva and hair. The first allegation, by itself, does not rise to the level of a constitutional violation, because a short-term deprivation of food for one day does not present an excessive risk to Plaintiff's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999) (the denial of food is not a *per se* violation; rather, a district court "must assess the amount and duration of the deprivation").

However, the claim that Defendant Leflore gave Plaintiff contaminated food on several

occasions, in combination with the missed-meal claim, raises an objective concern that Plaintiff's health may have been placed at risk (from either consuming the contaminated food or from being unable to eat it and thus being deprived of adequate nutrition). Further, the complaint indicates that Defendant Leflore's conduct was intentional, and that he acted with deliberate indifference to the risks to Plaintiff's health. At this stage, these allegations against Defendant Leflore state a claim that merits further review. However, this claim is subject to severance into a separate action.

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George,* 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)). Count 9 is not factually or legally related to the claims in Counts 4-7 against Defendants McLaurin, Reuter, Shaw, and Clayton, and is against a different Defendant.

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever Count 9 of Plaintiff's complaint against Defendant Leflore, and shall open a new case with a newly-assigned case number for that claim. However, Plaintiff shall have an opportunity to voluntarily dismiss the newly severed case if he does not wish to proceed on that claim or incur the additional filing fee.

**Pending Motion**

As noted above, Plaintiff's letter (Doc. 4), construed as a motion to amend complaint, is **DENIED** without prejudice.

Plaintiff's motion for recruitment of counsel (Doc. 2) shall be referred to United States

Magistrate Judge Frazier for further consideration.

**Disposition**

**COUNTS 1, 3, 8, 10, and 11** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **COUNTS 2, 12, and 13** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

Defendants **HAIDA, JUSTUS, WATSON, WEXFORD HEALTH SOURCES, KELLY, STRUBBERG, TRICE, RIPPERDA, O'GARA,** and **PHILO** are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's claim against Defendant Leflore for food contamination/denial (**COUNT 9**), which is unrelated to the surviving claims in Counts 4-7, is **SEVERED** into a new case.

The new case **SHALL BE ASSIGNED** to the undersigned District Judge for further proceedings.

In the new case, the Clerk is **DIRECTED** to file the following documents:

  (1)  This Memorandum and Order
  (2)  The Original Complaint (Doc. 1)
  (3)  Plaintiff's motion to proceed *in forma pauperis* (Doc. 5)

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with the newly-opened case, he must notify the Court in writing within 35 days (on or before September 27, 2013). Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened action, he **will be responsible for an additional $350.00 filing fee** in the new case. Service shall not be ordered on Defendant Leflore until after the deadline for Plaintiff's response.

**IT IS FURTHER ORDERED** that the *only claims remaining in this action are COUNTS 4-7 against Defendants McLaurin, Rueter, Clayton, and Shaw.* This case shall now

be captioned as: **ADRIAN BUFORD WADE, Plaintiff, vs. PHILLIP McLAURIN, JANA RUETER, KENNETH CLAYTON, and DR. SHAW, Defendants.**

**IT IS FURTHER ORDERED** that Defendant **LEFLORE** IS **TERMINATED** from *this* action with prejudice.

As to **COUNTS 4, 5, 6, and 7**, which remain in the instant case, the Clerk of Court shall prepare for Defendants **McLAURIN, RUETER, CLAYTON,** and **SHAW**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received

by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 2).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 22, 2013**

s/ J. PHIL GILBERT
United States District Judge
